IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEORGE R. PARRA,              § | | |
|     Plaintiff,              § | | |
| § | | |
| v.              § | | CIVIL ACTION NO. H-10-0602 |
| § | | |
| DEVON ENERGY PRODUCTION     § | | |
| COMPANY,              § | | |
|     Defendant.              § | | |

## **MEMORANDUM AND ORDER**

Pending before the Court in this employment discrimination case are Defendant's Motion for Summary Judgment [Doc. # 11] and Defendant's Alternative Motion for Partial Summary Judgment to Limit Plaintiff's Damages Based on After-Acquired Evidence [Doc. # 12]. Plaintiff has neither filed a response nor requested additional time to do so. Having considered the full record and the applicable legal authorities, the Court concludes Defendant's Motion for Summary Judgment [Doc. # 11] should be **granted**. Accordingly, Defendant's Alternative Motion for Partial Summary Judgment to Limit Plaintiff's Damages Based on After-Acquired Evidence [Doc. # 12] is **denied as moot.**

## I.     BACKGROUND

Plaintiff George Parra ("Parra"), a fifty nine year old Hispanic male who was born in Maracay, Venezuala, was hired in 2000 by Mitchell Gas Services ("Mitchell") as an electrical engineer based in The Woodlands, Texas.[1]  Defendant Devon Energy Production Company ("Devon") merged with Mitchell in 2002.  After the merger, Devon offered Plaintiff a position as a senior staff midstream engineer in The Woodlands, and Plaintiff accepted.[2]

During his employment with Devon, Plaintiff was transferred to several different offices:

- In June 2003, Devon closed its office in The Woodlands, Texas. Devon asked Plaintiff to transfer to the Marketing & Midstream engineering group in Oklahoma City. Devon offered Plaintiff a salary increase and a relocation incentive. Plaintiff accepted the offer and moved to Oklahoma City. Plaintiff reported directly to Don Fippinger in Oklahoma City.[3]

- In 2004, Devon suffered a decline in engineering projects in its Marketing & Midstream group and no longer needed Plaintiff's services in Oklahoma City. Devon offered to transfer Plaintiff to Houston, Texas, where there was a greater need for engineering assistance, and Plaintiff accepted. Plaintiff's salary did not change and he was given a raise at

---

[1]   Oral Deposition of George Rafael Parra, Exhibit A to Defendant's Motion for Summary Judgment [Doc. # 11-1] ("Parra Depo."), at 10, 25, 35-36.

[2]   *Id.* at 37.

[3]   *Id.* at 38-41, 44, 47-48; *see also* Exhibit C to Defendant's Motion for Summary Judgment [Doc. # 11-3], at 2.

>   the end of 2004. Plaintiff reported directly to Ray Solis while in Houston.[4]
>
> • In mid-2006, a specific need for a full-time electrical engineer arose in Devon's facility in Bridgeport, Texas. Plaintiff specialized in electrical engineering and was a logical choice for the position. Plaintiff spent most of 2006 working in Bridgeport. Devon temporarily reassigned Plaintiff to the Bridgeport facility on a full-time basis beginning in 2007. During this temporary assignment, Devon paid Plaintiff's condominium expenses in Bridgeport and provided Plaintiff with a company car. Plaintiff reported to Omar Hernandez ("Hernandez") while in Bridgeport. Plaintiff was still assigned to Bridgeport when his employment with Devon ended.[5]

During the week of March 3, 2008, Plaintiff asked Hernandez for four weeks of vacation to begin on March 10, 2008. Plaintiff told Hernandez that he needed this vacation to finish some classes he was taking in furtherance of a doctorate ("Ph.D.") degree through Capella University. Plaintiff told Hernandez that he would return to

---

[4]  *See* Parra Depo., at 47, 49-50, 54, 55; *see also* Declaration of Richard Luedecke [Doc. # 11-2], Exhibit B to Defendant's Motion for Summary Judgment [Doc. # 11-2] ("Luedecke Decl."), ¶ 4.

[5]  *See* Parra Depo., at 55-57, 59-60, 68, 159; Luedecke Decl., ¶¶ 5-6.

work in mid-April 2008.  Although a vacation request of that length was unusual,[6] Hernandez approved the request.[7]

Uncontroverted evidence shows that Plaintiff was not enrolled and did not participate in any Ph.D. classes or program in March or April 2008.[8]  Instead, the undisputed evidence demonstrates that Plaintiff used his vacation time to commence working with another company.  Plaintiff signed an employment agreement with Aerotek Energy Services, Inc. ("Aerotek") on March 10, 2008, and began rendering services for its client Spectra Energy ("Spectra").[9]  Plaintiff testified that he knew prior to taking his vacation leave that he would be working full-time for Spectra

---

[6] Devon's vacation policy requires employees to schedule vacation as far in advance as possible and to obtain prior supervisor approval before using vacation time.  Vacations are to be scheduled so as to avoid substantial disruption in business operations.  Employees cannot simply take vacation on demand.  Vacations are typically only approved in increments of one to two weeks or less.  A four-week vacation is unusually long and only approved under special circumstances.  Devon's records reflect that vacations of more than two consecutive weeks are rare.  *See* Declaration of Les Hoven, Exhibit D to Defendant's Motion for Summary Judgment [Doc. # 11-4] ("Hoven Decl."), ¶¶ 2-3.

[7] *See* Parra Depo., at 72-73, 75-76.

[8] Indeed, to the contrary, Plaintiff sent an email to Cassandra Wilds, an Enrollment Director with Capella University, on February 11, 2007, asking to be withdrawn from the University.  *See* Exhibit C to Defendant's Motion for Summary Judgment [Doc. # 11-3], at 3-4.  Additionally, a copy of Plaintiff's transcript from Capella University dated September 23, 2010, lists no courses as having been attempted or completed by Plaintiff.  *See id.* at 5.

[9] *See id.* at 7-8.

beginning on March 10, 2008, but he never informed Devon of those plans.[10] Plaintiff also never corrected his representation to Hernandez that he was using his vacation to take Ph.D. classes and continued to mislead Devon about the reasons he needed vacation leave.[11]

On April 23, 2008, after Plaintiff had been on leave for over six weeks, Hernandez contacted Les Hoven ("Hoven"), Devon's Director of Human Resources Operations, and Richard Luedecke ("Luedecke"), then Devon's Regional Manager–Midstream Operations, to inform them that Plaintiff had not returned to work from his vacation leave. Hernandez also informed Hoven and Luedecke that Plaintiff's continued absence was impacting work operations and the completion of engineering projects. Luedecke advised Hernandez to tell Plaintiff to return to work.[12]

---

[10] *See* Parra Depo., at 101-02.

[11] *See* Parra Depo., at 90, 98, 101-02, 113. On April 16, 2008, Plaintiff wrote an email to Dan Jones, a Technical Superintendent with Devon, and his supervisor Hernandez, stating:

> This PhD school is more intense than a full-time job, but I am almost done with this year full-time quarter attendance. . . The quarter ends on 5/23/08. The earliest I can be in the office will be 6/2/08. I only need to do this once a year until I graduate in mid-2011.

Exhibit C to Defendant's Motion for Summary Judgment [Doc. # 11-3], at 6.

[12] Hoven Decl., ¶ 6; Luedecke Decl., ¶ 8.

On April 24, 2008, Hernandez sent Plaintiff an email advising him to return to work.[13] At some later date, Plaintiff spoke with Hernadez by telephone and told Hernandez that he did not intend to return to work unless certain "demands" were met, including a guaranteed salary increase. Plaintiff testified:

> I was being asked – demanded to come back to work during my vacation. I had 200 hours left to use. I worked my butt off during my vacation, and they kept called me back to tell me, "You need to come back." And I said, "Well, if I'm going to be coming back I got to ask you for a guarantee," like you said – I don't recall the word "guarantee," but let's assume that this is in the record – "that I will be given a fair salary increase. If that's something you can deliver for me – and I want it now so I won't be harassed by the time I get back there – then I will come back as soon as you want me to."[14]

Plaintiff made similar admissions to the assigned EEOC investigator.[15] Plaintiff did not return to work.

Hernandez spoke with Plaintiff by telephone again on May 5, 2008. Plaintiff told Hernandez that he could not return to work until May 30, 2008. Plaintiff also told Hernandez that he would not return to work unless he received a guarantee that he

---

[13] Plaintiff never replied to this email. He testified that although he drafted a response, he did not try to send it until after he had been terminated and his email account had been suspended. Parra Depo., at 168-69.

[14] *Id.* at 69-70.

[15] *See* Exhibit C to Defendant's Motion for Summary Judgment [Doc. # 11-3], at 19 ("I confirmed to Mr. Hernandez that I would come back to Devon if I could get a guarantee from Devon that I would get a salary increase in 2008 and that I would receive no harassment during my performance review time in November of 2008.").

would receive a salary increase at the end of the year. Plaintiff also told Hernandez that he planned to resign if his salary demands were not met.[16] Hernandez forwarded his communications with Plaintiff to Hoven and Luedecke.[17]

On May 9, 2008, Devon formally terminated Plaintiff's employment for refusal to return to work. This decision was made by Luedecke in consultation with Hernadez and Hoven. Hernandez informed Plaintiff that his employment had been terminated by telephone and sent Plaintiff a signed written memorandum, summarizing their communications.[18]

Devon replaced Plaintiff with Ann Hunt, then age sixty nine. Plaintiff continues to work for Aerotek/Spectra and was paid $155,560.44 by Aerotek in 2009. Plaintiff's base salary at Devon as of May 2008 was approximately $115,000.00 per year.[19]

Plaintiff filed this lawsuit in Texas state court, alleging employment discrimination under the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. § 21.001 *et seq.* Plaintiff alleges in his Complaint that he was

---

[16] *See id.* at 10.

[17] Hoven Decl., ¶ 6; Luedecke Decl., ¶ 8.

[18] *See* Luedecke Decl., ¶ 12; Hoven Decl., ¶ 6; Parra Depo., at 175-76; Exhibit C to Defendant's Motion for Summary Judgment [Doc. # 11-3], at 10.

[19] *See* Luedecke Decl., ¶¶ 13-14; Parra Depo., at 106.

subjected to various forms of discrimination based on his race, skin color, national origin, and age, including being "systematically shuffled from one office to another," "harassed about his expense reports and forced to sign accusation letters for his human resources file," and not being "reimbursed for his MBA tuition despite a company policy that reimburses employees for tuition and fees."[20] Plaintiff also alleges that he "was the subject of offensive comments regarding his national origin, race and skin color."[21] Finally, Plaintiff alleges that Devon discriminated against him based on his race, skin color, national origin, and age, because these characteristics allegedly all were motivating factors in Devon's decision to terminate Plaintiff's employment.[22] Defendant removed the suit to this federal court, and filed its Motions for Summary Judgment [Docs. # 11, # 12]. These Motions are now ripe for decision.

## II.   **STANDARD FOR SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069,

---

[20]   Plaintiff's Original Petition [Doc. # 1-2], ¶ 5.2.

[21]   *Id.*, ¶ 5.3.

[22]   *Id.*, ¶ 5.4.

1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003) (internal citation omitted). The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Rather, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may, *inter alia,* "(2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and

supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." FED. R. CIV. P. 56(e).

Finally, pursuant to the Local Rules of the United States District Court for the Southern District of Texas, failure to respond to a motion is taken as a representation of no opposition. S.D. TEX. R. 7.3, 7.4. However, when a plaintiff fails to respond to a defendant's summary judgment motion, the Court must nevertheless consider the merits of the motion. *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1022-23 (5th Cir. 1995).

## III.   ANALYSIS

*State Discrimination Law.–* Plaintiff alleges discriminatory discharge based on his race, skin color, national origin, and age, in violation of the Texas Commission on Human Rights Act ("TCHRA"). The TCHRA prohibits discrimination in employment based on "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE ANN. § 21.051 (West 2006). "The [TCHRA] is modeled after federal civil rights law" and "purports to correlate state law with federal law in the area of discrimination in employment." *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999); *accord Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006); *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). Thus courts must look to the "analogous federal precedent"—in this case, Title

VII—when interpreting the TCHRA. *NME Hosps. Inc.*, 994 S.W.2d at 144; *see also Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917.

***Race, Color or National Origin Discrimination.*–** In order to overcome Devon's Motion for Summary Judgment, Plaintiff must raise a genuine issue of material fact whether Devon discriminated against him on the basis of his race, skin color, national origin, or age. *See* FED. R. CIV. P. 56(c). "In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court." *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003). Where, as here, there is no direct evidence of discrimination, Plaintiff's claims under the TCHRA are analyzed using the test first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Wal-Mart Stores, Inc.*, 121 S.W.3d at 739; *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 434 & n.5 (Tex. App.–Houston [14 Dist.] 2002, pet. denied). "Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case." *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (Tex. 2007). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981)). The burden on the employer at this stage "is one of production, not persuasion; it can

involve no credibility assessment." *Reeves*, 530 U.S. at 142 (internal quotation marks omitted). "If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic." *Alvarado*, 492 F.3d at 611 (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 312 (5th Cir. 2004)).

Plaintiff has not presented any proof that he can establish a *prima facie* case of discrimination based on race, color, national origin, or age. Defendant is entitled to summary judgment. A *prima facie* case of race, color, or national origin discrimination based on circumstantial evidence requires a plaintiff present evidence that "he or she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." *Abarca v. Metro Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005).

Plaintiff has not satisfied the fourth element of the *prima facie* case of race, color, or national origin discrimination. He has put forth no evidence rasing a genuine issue of material fact that, when he was terminated, he was treated differently than any similarly situated employee. To establish the fourth element of a *prima facie* case of

race discrimination under Title VII, a plaintiff may present "circumstantial evidence that [he] has been treated differently than similarly situated non-members of the protected class." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 484 (5th Cir. 2000) (citing *Polanco v. City of Austin*, 78 F.3d 968, 977 (5th Cir. 1996)). To satisfy the "similarly situated" requirement, the circumstances of the plaintiff and the non-protected class member must be more than similar, they must be "nearly identical." *Perez v. Tex. Dept. of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004). Thus, Plaintiff must demonstrate "'that the misconduct for which [he] was discharged was nearly identical to that engaged in by a [Caucasian] employee whom the company retained.'" *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)). Moreover, the "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decision[]," *Perez*, 395 F.3d at 209, and the comparator employees' position in organization—*e.g.*, job title, duties, supervisor—must be roughly the same. *See, e.g.*, *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2007); *see also Ramirez v. Gonzales*, 225 F. App'x 203, 207–08 (5th Cir. 2005); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991).

Plaintiff does not identify any comparator employee and provides no evidence that any other employee was treated differently (*i.e.*, not terminated) when he failed to return to work following a leave of absence. Plaintiff also provides no evidence that any other employee was not terminated after intentionally misrepresenting the reasons for his vacation leave, working for another company while on leave, and then continuing to work for that other employer when asked to return to work.[23] This lack of proof is fatal to Plaintiff's claim in the face of Defendant's summary judgment motion. *See, e.g.*, *Preston v. Tex. Dep't of Family & Protective Servs*, 222 F. App'x 353, 358–59 (5th Cir. 2007) (sustaining summary judgment for the defendant-employer because the plaintiff "fail[ed] to present any evidence that [other] employees engaged in 'nearly identical' misconduct for which she was terminated" and because the plaintiff admitted to having no personal knowledge about the circumstances surrounding the putative comparator employee's alleged wrongdoing); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("[T]he nonmovant cannot satisfy [his] burden [on summary judgment] with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."). Thus, Plaintiff has failed to adduce proof to meet his *prima facie* burden on his claims of discrimination on the

---

[23] Indeed, Defendant presents evidence that Plaintiff's actions constitute multiple violations of Devon's Code of Business Conduct and Conflicts of Interest Policies. Hoven, Director of Human Resources, testified that had he known of these violations and that Plaintiff was working for another company prior to May 9, 2008, he would have recommended immediately terminating Plaintiff's employment. *See* Hoven Decl., ¶ 7.

basis of race, skin color, or national origin, and Defendant is entitled to summary judgment on these claims.[24]

***Age Discrimination.–*** To establish a *prima facie* case of age discrimination, a plaintiff must establish that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age." *Rachid*, 376 F.3d at 309. Uncontroverted evidence demonstrates that Plaintiff was replaced by Ann Hunt, then age 69. Plaintiff provides no evidence that he was "otherwise discharged because of his age." For these reasons, Plaintiff cannot establish the fourth element of a *prima*

---

[24] In his Original Petition [Doc. # 1-2], Plaintiff cites a litany of complaints about his time with Devon. For example, Plaintiff alleges that he was "systematically shuffled from one office to another," "harassed about his expense reports and forced to sign accusation letters for his human resources file," and that he was not "reimbursed for his MBA tuition despite a company policy that reimburses employees for tuition and fees." To the extent Plaintiff is complaining of other adverse employment actions, the Court notes that in a Title VII case, an adverse employment action must be a "tangible employment action that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998); *accord Brazoria County v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004). A transfer may constitute an adverse employment action "if the new position proves objectively worse–such as being less prestigious or less interesting or providing less room for advancement." *Alvarado*, 492 F.3d at 613-14. Plaintiff has offered no evidence suggesting that he was ever transferred to an "objectively worse" position. None of Plaintiff's other complaints rise to the level of an actionable employment action. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 535 (S.D. Tex. 1999) (citing *Greaser v. Mo. Dep't. of Corr.*, 145 F.3d 979, 984 (8th Cir. 1988)). Thus, the only action by Devon that is pertinent to Plaintiff's discrimination claim is its decision to terminate Plaintiff's employment.

*facie* case of age discrimination.  Defendant is entitled to summary judgment on Plaintiff's age discrimination claim.

*No Pretext Evidence.*–  Assuming *arguendo* that Plaintiff had succeeded in establishing a *prima facie* case, Plaintiff has provided no evidence to raise a genuine material question of fact whether Devon's stated, lawful reasons for terminating him (*i.e.*, his failure to return to work) were pretext for unlawful discrimination.  Thus, Devon is entitled to summary judgment on Plaintiff's discrimination claims under the TCHRA.[25]

## IV. CONCLUSION AND ORDER

---

[25] Plaintiff also alleges that he "was the subject of offensive comments regarding his national origin, race and skin color."  Plaintiff's Original Petition [Doc. # 1-2], ¶ 5.2.  These allegations, *inter alia*, suggest a possible hostile environment claim although Plaintiff did not allege such a claim in his Complaint.  Plaintiff's allegations, however, are insufficient for this claim.  Also, he has provided no evidence to raise any genuine fact issue on this theory.  "A prima facie case of racial harassment alleging hostile work environment normally consists of five elements:  (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."  *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 509–10 (5th Cir. 1999)); *accord EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).  "'[S]imple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges' that can survive summary judgment."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (quoting *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004)).  At best, cited portions of Plaintiff's deposition suggest five racially insensitive remarks over Plaintiff's eight-year employment, only two of which related directly to Plaintiff.  The Court concludes that these isolated incidents do not rise to the level of actionable harassment.  Accordingly, to the extent Plaintiff intended to bring a hostile work environment claim, that claim fails as a matter of law and Defendant is entitled to summary judgment.

Because Plaintiff has failed to establish a *prima facie* case of discrimination based on race, skin color, national origin, or age, his claims for discriminatory discharge under the TCHRA fail as a matter of law. Plaintiff also has provided no evidence creating a genuine issue of material fact that Devon's decision to terminate him was impermissibly motivated by racially discriminatory animus. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims under the Texas Commission on Human Rights Act. It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 11] is **GRANTED.** It is further

**ORDERED** that Defendant's Alternative Motion for Partial Summary Judgment to Limit Plaintiff's Damages Based on After-Acquired Evidence [Doc. # 12] is **DENIED as moot.**

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this 31st day of **March, 2011**.

Nancy F. Atlas
United States District Judge